1
2
3
4
5
6
7
8
9

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LENDA CHARMAINE CYPRAIN,<br><br>                              Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of the Social Security<br>Administration,<br><br>                              Defendant. | Case No. 15-cv-02413-BAS-BGS<br><br>**ORDER:**<br><br>**(1) SUSTAINING PLAINTIFF'S OBJECTIONS (ECF No. 20);**<br><br>**(2) DECLINING TO ADOPT REPORT AND RECOMMENDATION (ECF No. 19);**<br><br>**(3) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 11);**<br><br>**(4) DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 14); AND**<br><br>**(5) REMANDING ACTION FOR FURTHER PROCEEDINGS** |

## I.    INTRODUCTION

Plaintiff Lenda Charmaine Cyprain commenced this action seeking review of the Social Security Commissioner's denial of her application for Supplemental Security Income ("SSI") benefits. After treating Plaintiff for several months, a

1   psychologist referred Plaintiff to a psychiatrist for a psychiatric evaluation. The

2   psychiatrist diagnosed Plaintiff with major depressive disorder, recurring, severe, but

3   without psychosis. In the course of treating Plaintiff, the psychiatrist upgraded the

4   severity of Plaintiff's condition to major depressive disorder, recurring, severe, and

5   with psychosis. After observing Plaintiff's inappropriate suspiciousness or hostility,

6   psychomotor agitation, inappropriate affect, easy distractibility, and illogical

7   thinking, the psychiatrist also opined that Plaintiff's condition would severely limit

8   her ability to do many work-related activities.

9        Separately, in seeking relief for pain and numbness in her hands, Plaintiff

10  underwent an electromyography that revealed she had median nerve lesions and

11  suffered from severe carpal tunnel syndrome on her right side, as well as mild carpal

12  tunnel syndrome on her left side. A neurologist prescribed Plaintiff wrist splints, and

13  when her symptoms did not improve, he referred Plaintiff to a hand orthopedist for a

14  surgical evaluation.

15       Plaintiff then sought SSI benefits based on these impairments, among others.

16  The Administrate Law Judge ("ALJ") rejected Plaintiff's claim, however, at step two

17  of the five-step sequential analysis for disability claims. Although the ALJ

18  acknowledged Plaintiff suffers from physical and mental impairments, he found these

19  impairments are not legally severe. Therefore, the ALJ concluded Plaintiff's claim

20  could not proceed past step two—the step used as a de minimis screening device to

21  dispose of groundless claims.

22       After the Social Security Administration's Appeals Council denied her request

23  for review, Plaintiff filed this action challenging the ALJ's determination. The Court

24  referred this matter to the magistrate judge for a Report & Recommendation ("R&R")

25  in accordance with 28 U.S.C. § 636(b)(1)(B) and Civil Local Rule 72.1(c)(1). After

26  the parties filed cross-motions for summary judgment, the magistrate judge issued an

27  R&R recommending this Court deny Plaintiff's motion (ECF No. 11) and grant

28

15cv2413

1  Defendant's motion (ECF No. 14). (ECF No. 19.) Plaintiff objects to the R&R. (ECF

2  No. 20.)

3  The ALJ erred in rejecting Plaintiff's claim at step two. There is not a "total

4  absence of objective evidence" of a severe medical impairment that would permit

5  this Court to affirm a finding of no disability at step two. *See Webb v. Barnhart*, 433

6  F.3d 683, 688 (9th Cir. 2005); *see also, e.g.*, *Ortiz v. Comm'r of Soc. Sec.*, 425 F.

7  App'x 653, 655 (9th Cir. 2011); *Styles v. Colvin*, No. 14-cv-2229-JAH(WVG), 2016

8  WL 1253482, at *4 (S.D. Cal. Mar. 31, 2016). Accordingly, despite that Plaintiff may

9  not succeed in proving that she is entitled to disability benefits, the ALJ should have

10  proceeded past step two of the disability analysis. *See Webb*, 433 F.3d at 688.

11  Consequently, for the following reasons, the Court **SUSTAINS** Plaintiff's

12  objections, **DECLINES** to adopt the R&R, **GRANTS** Plaintiff's motion, **DENIES**

13  Defendant's motion, and **REMANDS** this action for further proceedings consistent

14  with this order.

15

16  **II.   BACKGROUND**

17  Although the Court declines to adopt the R&R's conclusions, the Court agrees

18  with the R&R's detailed narrative of Plaintiff's medical records and the

19  administrative proceedings. (*See* R&R 1:18–2:3, 3:17–16:21.) The Court

20  incorporates this narrative here but adds the following synopsis to provide context

21  for the Court's discussion of Plaintiff's objections.

22

23  **A.   Mental Health Treatment**

24  **1.   Psychologist Rachelle Rene, Ph.D.**

25  A primary care physician referred Plaintiff to psychologist Rachelle Rene,

26  Ph.D. for treatment of depression. (Administrative Record ("AR") 405.) In Dr.

27  Rene's initial assessment, she noted Plaintiff reported symptoms of depression,

28  including crying spells, decreased motivation, decreased energy, difficulty sleeping,

increased weight gain, increased isolation, and restlessness. (*Id.*) Dr. Rene ultimately concluded that Plaintiff "presented as very depressed and anxious," with symptoms that are consistent with (i) major depressive disorder, recurrent, moderate, without psychotic features and (ii) generalized anxiety disorder. (AR 406.)

After her initial assessment, Dr. Rene regularly met with Plaintiff for individual treatment sessions. (AR 380, 382–85, 388–93, 395–99, 401–04.) Plaintiff's condition oscillated throughout these sessions. (*See id.*) At some sessions, her condition had improved. (*See* AR 380, 389, 395, 398.) Plaintiff reported she had a "good week" with no suicidal ideation at one session. (AR 380.) At another session, she presented in a good mood and stated she felt "a lot better." (AR 395.) At many other sessions, however, Plaintiff's condition had not improved or had deteriorated. (*See* AR 382–83, 385, 388, 391–92, 397, 401.) For example, at one session, she presented visibly tearful and stated she felt more depressed. (AR 397.) She again presented with a sad mood at another session and stated she had stayed in bed since the prior session. (AR 391.) In other sessions, she reported suicidal ideation. (AR 382–83, 388.)

### 2.     Psychiatrist George Brolaski, M.D.

After treating Plaintiff for several months, Dr. Rene referred her to psychiatrist George Brolaski, M.D. for a psychiatric evaluation. (AR 376–79.) During the evaluation, Plaintiff reported having thoughts of death and suicidal ideation but without a plan or present intention. (AR 376.) She also reported experiencing auditory hallucinations a few times a month. (*Id.*) Further, a mental status examination revealed a sad and worried facial expression, psychomotor agitation, and a depressed mood. (AR 378.) Dr. Brolaski diagnosed Plaintiff with major depressive disorder, recurrent, severe, without psychosis, and he assessed her current Global Assessment of Functioning ("GAF") score at 47 (AR 379), indicating she "suffered from serious psychological symptoms or impairments," *see Boyd v. Colvin*,

524 F. App'x 334, 336 (9th Cir. 2013) (citing *Diagnostic & Statistical Manual of Mental Disorders* 32–34 (4th ed. Text Revision 2000)).

After this evaluation, Plaintiff continued to attend outpatient therapy sessions with Dr. Rene. (AR 374–75, 455–61, 463, 465–69, 471, 474–77, 480–83, 485–89.) When she returned to Dr. Brolaski in the following year, she reported diminished sleep of only three to four hours per night. (AR 589.) In seeing Dr. Brolaski over the course of the next several months, she also again reported experiencing hallucinations. (AR 581–83, 585–86.) During these treatment sessions, Dr. Brolaski diagnosed Plaintiff with major depressive disorder, recurrent, severe, with psychosis. (AR 581–86, 589.)

Then, approximately a year and nine months after he first evaluated Plaintiff, Dr. Brolaski completed a "Mental Impairment Residual Functional Capacity Questionnaire." (AR 600–05.) In this assessment, Dr. Brolaski noted Plaintiff had responded poorly to medication and individual therapy, and he identified her prognosis as poor. (AR 600.) Dr. Brolaski also provided his opinion on Plaintiff's ability to do work-related activities in three categories that were further divided into a total of twenty-five subcategories. (AR 602–03.) These subcategories included activities such as Plaintiff's ability to "deal with normal work stress" and "maintain attention for two hour segments." (*Id.*) For twenty-one of these subcategories, Dr. Brolaski rated Plaintiff's abilities as either "seriously limited, but not precluded," or "unable to meet competitive standards." (*Id.*) In addition, he indicated Plaintiff had "marked" functional limitations in "maintaining social functioning" and "maintaining concentration, persistence, or pace." (AR 604.)

### B.   Carpal Tunnel Syndrome

Plaintiff sought treatment from a primary care physician for weakness in her hands. (AR 415.) She later reported wrist pain and a numbing in both of her hands to the physician. (AR 387, 394.) Plaintiff also reported to Dr. Rene in one of her

treatment sessions that she was feeling anxious and depressed due to recent numbness and tingling in her hands and fingers. (AR 388.)

Plaintiff thereafter saw neurology resident Galina Nikolskaya for (i) numbness in her fingertips and (ii) numbness in her right wrist with associated aching pain. (AR 441.) After an examination, Ms. Nikolskaya's impression included likely de Quervain's tenosynovitis and carpal tunnel syndrome in the right wrist. (AR 443.) Dr. Omar Ghausi, the attending neurologist, verified Ms. Nikolskaya's exam and assessed Plaintiff with carpal tunnel syndrome that is severe on the right side, mild on the left side, and superimposed upon de Quervain's tenosynovitis. (AR 440.) He recommended wrist splints, possible steroid injections, and an electromyography ("EMG") to quantify the severity of Plaintiff's condition. (*Id.*)

The resulting EMG was abnormal. (AR 447.) It revealed median nerve lesions at both of Plaintiff's wrists that are consistent with carpal tunnel syndrome, "extremely severe on the right and mild to moderate on the left." (*Id.*) Plaintiff later returned to Dr. Ghausi because her symptoms had not improved. (AR 558.) He referred Plaintiff to see an "ortho hand" for consideration of surgical intervention, but stated that she would continue conservative treatments in the meantime. (*Id.*)

### C.   The ALJ's Determination

The ALJ found Plaintiff had not engaged in substantial gainful activity since her application for SSI benefits, satisfying step one of the five-step sequential disability analysis. (AR 30.) At step two, after reviewing the medical evidence, the ALJ concluded the evidence does not support "a finding that [Plaintiff] has any severe impairments." (AR 35.) The ALJ provided several reasons for concluding Plaintiff's mental impairments are not severe, including a lack of "evidence the claimant has required any inpatient psychiatric care." (AR 36.) The ALJ also rejected Dr. Brolaski's assessment, reasoning it was inconsistent with Dr. Brolaski's "mild clinical findings" and the reports of two consultative examiners. (*Id.*) In addition, the

15cv2413

1   ALJ found factors "bear negatively on Plaintiff's general credibility," including that

2   she has "given inconsistent statements regarding her mental health issues." (AR 36–

3   37.)

4         The ALJ similarly found Plaintiff's carpal tunnel syndrome is not severe. (AR

5   36.) He reasoned in part that there is "no evidence the claimant has received any

6   treatment for her carpal tunnel syndrome or that she requires surgery or even the use

7   of conservative modalities such as wrist splints." (*Id.*) Further, the ALJ generally

8   reasoned that "no treating or examining medical source has assessed the claimant as

9   wholly incapable of sustaining work activity due to any medical condition." (*Id.*)

10

11         **D.    The R&R**

12         The R&R concludes the ALJ did not err in rejecting Plaintiff's claim at step

13   two. (*See* R&R 33:21–34:1.) It reasons that substantial evidence supports the ALJ's

14   determination that Plaintiff's mental impairments and carpal tunnel syndrome are not

15   severe. (*Id.* 31:4–8, 33:18–20.) Thus, the R&R recommends this Court deny

16   Plaintiff's motion for summary judgment and grant Defendant's cross-motion. (*Id.*

17   33:21–34:1.)

18

19   **III.   LEGAL STANDARD**

20         **A.    Review of the R&R**

21         The court reviews *de novo* those portions of the R&R to which objections are

22   made. 28 U.S.C. § 636(b)(1). It may "accept, reject, or modify, in whole or in part,

23   the findings or recommendations made by the magistrate judge." *Id.* But "[t]he statute

24   makes it clear that the district judge must review the magistrate judge's findings and

25   recommendations de novo *if objection is made*, but not otherwise." *United States v.*

26   *Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc); *see also Schmidt v.*

27   *Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) (concluding that where no

28

– 7 –                                            15cv2413

objections were filed, the district court had no obligation to review the magistrate judge's report).

### B.   Review of a Denial of Social Security Benefits

A claimant may obtain judicial review of the Commissioner's final decision to deny benefits. 42 U.S.C. § 405(g). The district court "will disturb the denial of benefits only if the decision 'contains legal error or is not supported by substantial evidence.' " *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' The evidence 'must be more than a mere scintilla,' but may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (citation omitted) (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)).

Further, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citing cases). The court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

### IV.   ANALYSIS

Plaintiff raises two objections to the R&R. First, she argues the R&R erroneously recommends that substantial evidence supports the ALJ's determination that her mental impairments are not severe. (Objs. 1:14–8:15.) Second, Plaintiff similarly disputes the R&R's conclusion that substantial evidence supports the ALJ's finding that her carpal tunnel syndrome is not severe. (*Id.* 8:17–10:6.) Accordingly, the Court will review *de novo* these portions of the R&R. *See* 28 U.S.C. § 636(b)(1).

"The Social Security Act defines disability as 'the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.' " *Webb*, 433 F.3d at 686 (quoting 42 U.S.C. § 423(d)(1)(A)). "In order to determine whether an applicant is disabled, an ALJ must follow a five-step process." *Dominguez v. Colvin*, 808 F.3d 403, 405 (9th Cir. 2015) (citing 20 C.F.R. § 416.920). At step one, the ALJ examines whether "the claimant did not perform substantial gainful activity during the period of claimed disability." *Id.* (citing 20 C.F.R. § 416.920(a)(4)(i)). Here, the ALJ determined Plaintiff satisfied step one and proceeded to step two. (AR 30.)

At step two, the ALJ must determine whether the claimant "ha[s] an impairment, or a combination of impairments that is 'severe.' " *Dominguez*, 808 F.3d at 405 (quoting 20 C.F.R. § 416.920(a)(4)(ii)). An impairment is severe if it "significantly limits" the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 416.920. "The 'ability to do basic work activities' is defined as 'the abilities and aptitudes necessary to do most jobs.' " *Webb*, 433 F.3d at 686 (quoting 20 C.F.R. § 404.1521(b)). These abilities include physical functions, carrying out simple instructions, use of judgment, and responding appropriately to supervision. 20 C.F.R. § 404.1521(b).

"An impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.' " *Webb*, 433 F.3d at 686 (emphasis in original) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). Moreover, the Social Security Commissioner "has stated that '[i]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the

1    not severe evaluation step.' " *Id.* at 687 (quoting SSR 85–28, 1985 WL 56856 (Jan.
2    1, 1985)).

3           Consequently, "the step-two inquiry is a de minimis screening device [used]
4    to dispose of groundless claims." *Smolen*, 80 F.3d at 1290; *see also Bowen v. Yuckert*,
5    482 U.S. 137, 153 (1987) (noting the step-two inquiry is intended to identify
6    "claimants whose medical impairments are so slight that it is unlikely they would be
7    found to be disabled"); *Ortiz v. Comm'r of Soc. Sec.*, 425 F. App'x 653, 655 (9th Cir.
8    2011) ("Ample authority cautions against a determination of nondisability at step
9    two."). Further, because step two is a de minimis screening device, "an ALJ may find
10   that a claimant lacks a medically severe impairment or combination of impairments
11   only when his conclusion is 'clearly established by medical evidence.' " *Webb*, 433
12   F.3d at 687 (quoting SSR 85–28, 1985 WL 56856 (Jan. 1, 1985)).

14   **A.    Severity of Plaintiff's Mental Impairments**

15          The Court begins with the ALJ's determination that Plaintiff's mental
16   impairments are not severe. In light of the framework discussed above, a court
17   reviews this type of determination by analyzing " 'whether the ALJ had substantial
18   evidence to find that the medical evidence clearly established that' [the claimant] did
19   not have a severe mental impairment." *Davenport v. Colvin*, 608 F. App'x 480, 481
20   (9th Cir. 2015) (quoting *Webb*, 433 F.3d at 687).

21          To illustrate, in *Davenport*, the Ninth Circuit held the ALJ did not err in
22   concluding that the claimant's mental impairments were nonsevere. 608 F. App'x at
23   481. The court reasoned the record supported this conclusion because the claimant
24   "repeatedly stated that he did not feel depressed." *Id.* A social worker's and
25   physician's treatment notes also indicated that the claimant's "depression and anxiety
26   were either mild or improved with treatment." *Id.* Further, the court noted that any
27   error regarding the ALJ's step-two determination was harmless because the ALJ
28   proceeded to step five and considered the claimant's mental impairments as part of

1    that analysis. *Id.* Thus, the Ninth Circuit affirmed the ALJ's determination. *Id.* at 482;

2    *see also Spence v. Colvin*, 617 F. App'x 752, 753–54 (9th Cir. 2015) (holding the

3    ALJ did not err in concluding the claimant lacked a severe mental impairment where

4    there was "no objective medical evidence to support . . . suggestions of mental

5    limitations" and "none of the medical records contain[ed] evidence of a mental

6    limitation").

7        In contrast, in *Ortiz v. Commissioner of Social Security*, 425 F. App'x 653, 655

8    (9th Cir. 2011), the Ninth Circuit concluded the ALJ improperly rejected the

9    claimant's application for SSI benefits at step two. The court noted "the ALJ relied

10    on two mental evaluations diagnosing [the claimant] with depressive and anxiety

11    disorders but not ruling out either a learning disability or borderline intellectual

12    functioning." *Id.* Therefore, it reasoned this evidence was "not the 'total absence of

13    objective evidence of severe medical impairment' that would permit us to affirm 'a

14    finding of no disability at step two.' " *Id.* (quoting *Webb*, 433 F.3d at 688).

15    Accordingly, the Ninth Circuit remanded the case "to permit the ALJ to continue the

16    sequential analysis." *Id.*; *see also Delgado v. Comm'r of Soc. Sec. Admin.*, 500 F.

17    App'x 570, 570 (9th Cir. 2012) (concluding the ALJ erred in not proceeding past step

18    two where the claimant's treating physician opined that the claimant's "ability to

19    make occupational, performance, and personal/social adjustments are fair to poor").

20        In this case, the ALJ's conclusion that Plaintiff's mental impairments are not

21    severe relies on two determinations discussed in separate paragraphs of the ALJ's

22    decision. First, the ALJ found there is "a lack of evidence to support a finding of a

23    severe mental impairment." (AR 36.) Second, the ALJ rejected Plaintiff's treating

24    psychiatrist's opinions that indicate her mental impairments severely limit her ability

25    to perform many work-related activities. (*Id.*) Plaintiff's first objection challenges

26    both of these determinations. (Objs. 2:20–3:8, 4:11–8:15.)

27    //

28    //

### 1.   Lack of Evidence of a Severe Mental Impairment

The ALJ provided several reasons to support his conclusion that there is a lack of evidence that Plaintiff's mental impairments are severe. (AR 36.) Plaintiff contends that all of the ALJ's articulated reasons are "legally untenable or factually untrue" and therefore cannot support the ALJ's decision. (Objs. 2:18–4:8.) The Court will examine each reason in turn.

First, the ALJ reasoned "[t]here is no evidence the claimant has required any inpatient psychiatric care." (AR 36.) Plaintiff argues this rationale cannot justify the ALJ's nonseverity determination because the law does not require inpatient psychiatric care for a mental impairment to be considered severe. (Objs. 2:20–3:3.) The Court agrees. Inpatient psychiatric treatment is not a prerequisite to a finding of severity at step two. *E.g.*, *Corthion v. Colvin*, No. CV-15-00837-PHX-GMS, 2017 WL 68910, at *4 (D. Ariz. Jan. 6, 2017); *Johnson v. Colvin*, No. ED CV 13-1476-JSL E, 2014 WL 2586886, at *5 (C.D. Cal. June 7, 2014); *Matthews v. Astrue*, No. EDCV 11–01075–JEM, 2012 WL 1144423, at *9 (C.D. Cal. April 4, 2012). That Plaintiff did not check herself into a psychiatric ward does not constitute substantial evidence to support the ALJ's conclusion that her mental impairments are nonsevere. "Indeed, the Ninth Circuit has criticized the use of lack of treatment to reject mental complaints, both because mental illness is notoriously under-reported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Matthews*, 2012 WL 1144423, at *9 (citing *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299–00 (9th Cir. 1999)); *see also Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (cautioning against relying upon a claimant's failure to seek treatment for a mental disorder and noting "it is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness"). Thus, the ALJ's conclusion that Plaintiff's mental impairments are not severe cannot rest on this first rationale.

Second, the ALJ rationalized that Plaintiff's mental impairments are not severe because she has "consistently performed well on mental status testing, showing no signs of psychosis or significant deficits of mood, behavior, or cognitive functioning." (AR 36.) The record does not support this rationale. When Dr. Brolaski initially evaluated Plaintiff and performed a mental status examination, he observed Plaintiff's agitated motor activity, sad and worried facial expression, and depressed mood. (AR 378.) He later noted in his mental impairment assessment Plaintiff's "blunt, flat, or inappropriate affect," "psychomotor agitation or retardation," "persistent disturbances of mood or affect," "illogical thinking," and other deficits. (AR 601.) In addition, Dr. Rene found mood and affect defects in many of her mental status examinations during her therapy sessions with Plaintiff. (AR 375, 382–83, 388, 391, 395, 397–98, 401, 408, 460, 467, 480–81, 487, 533.) For example, her initial mental status examination revealed a sad expression, pressured speech, a depressed and anxious mood, an inability to concentrate, and poor insight. (AR 408.)

Moreover, Plaintiff's positive performance on some mental status examinations does not constitute substantial evidence for rejecting her claim at step two. For instance, Plaintiff performed well in one session with Dr. Rene when "she had a good week," (AR 380), before she later "fell into a depressive mood again" and appeared with a tearful affect, (AR 375). But, even when Plaintiff's positive performances are acknowledged, there is not substantial evidence to support the statement that she "consistently performed well" on these examinations. (*See* AR 375, 378, 382–83, 388, 391, 395, 397–98, 401, 408, 460, 467, 480–81, 487, 533.) Further, the Ninth Circuit has repeatedly cautioned that reports of improvement in the mental health context must be "interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014); *see also, e.g.*, *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1201 (9th Cir. 2008) ("Nor are the references in [a doctor]'s

notes that [the claimant]'s anxiety and depression were 'improving' sufficient to undermine the repeated diagnosis of those conditions[.]'"); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."). Plaintiff's positive performance on some of her many mental status examinations does not substantiate the conclusion that the medical evidence "clearly establishe[s]" that Plaintiff's mental impairments only amount to a "slight abnormality that has no more than a minimal effect on [her] ability to work." *See Webb*, 433 F.3d at 686–87. Hence, the Court concludes the ALJ's second rationale does not support rejecting Plaintiff's mental impairments as nonsevere.

Third, the ALJ reasoned the evidence does not support a finding of severity because Plaintiff "has been inconsistent in her complaints depending on to whom she is speaking." (AR 36.) The ALJ provided one example—he noted Plaintiff "generally denied issues with suicidal ideation or psychosis and frequently reported feeling fine or experiencing improvement in her depression" during her visits with Drs. Rene and Brolaski, but then "alleged problems with auditory hallucinations" during Dr. Soliman's evaluation. (*Id.*) This basis, too, is insufficient to reject Plaintiff's claim at step two. As mentioned above, the Court recognizes Plaintiff sporadically reported improvement in her symptoms, but these occasional periods of improvement do not support discounting the many instances where she exhibited symptoms of severe depression. (*See* AR 375, 378, 382–83, 388, 391, 395, 397–98, 401, 408, 460, 467, 480–81, 487, 533.) *See also Ryan*, 528 F.3d at 1200–01 (reasoning references in a physician's treatment notes that the claimant's anxiety and depression were "improving" was not "sufficient to undermine the repeated diagnosis of those conditions").

In addition, the ALJ's implication that Plaintiff reported auditory hallucinations only when being examined by agency examiner Dr. Soliman is

1   unfounded. Plaintiff reported auditory hallucinations to both Drs. Rene and Brolaski.

2   (AR 376, 474, 571, 581–86.) For example, Dr. Brolaski recorded in a treatment note

3   that Plaintiff was not sleeping well because of auditory hallucinations. (AR 581.) As

4   another example, Dr. Rene reported in one treatment note that Plaintiff had reported

5   "hearing voices" for a few weeks. (AR 474.) Therefore, the ALJ's perceived

6   inconsistency in Plaintiff's reporting of this symptom is not reasonable. Because the

7   ALJ's third reason is not supported by substantial evidence, it also cannot serve as a

8   justification for finding Plaintiff's mental impairments are not severe.

9       In sum, although the ALJ provided several reasons for concluding there is a

10  lack of evidence that Plaintiff's mental impairments are severe, these rationales do

11  not survive scrutiny.

12

13                      **2.      Rejection of Treating Psychiatrist's Opinions**

14      The ALJ's step-two determination is also dependent on his rejection of

15  Plaintiff's treating psychiatrist's assessment of her ability to perform work-related

16  activities. (*See* AR 36.) Plaintiff argues the reasons set forth by the ALJ for not

17  granting any weight to Dr. Brolaski's assessment are not supported by substantial

18  evidence. (Objs. 4:9–8:15.)

19      In the Ninth Circuit, courts "distinguish among the opinions of three types of

20  physicians: (1) those who treat the claimant (treating physicians); (2) those who

21  examine but do not treat the claimant (examining physicians); and (3) those who

22  neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*,

23  81 F.3d 821, 830 (9th Cir. 1995). "The opinions of treating doctors should be given

24  more weight than the opinions of doctors who do not treat the claimant." *Reddick v.*

25  *Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Further, the Ninth Circuit has explained

26          Where the treating doctor's opinion is not contradicted by another
            doctor, it may be rejected only for "clear and convincing" reasons
27          supported by substantial evidence in the record. Even if the treating
            doctor's opinion is contradicted by another doctor, the ALJ may not
28          reject this opinion without providing "specific and legitimate reasons"

> supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

*Orn*, 495 F.3d at 632 (citations omitted). In addition, the "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Here, Dr. Brolaski's opinions conflicted with those of the two state agency examiners, Drs. Trimble and Soliman. The ALJ proceeded to reject Dr. Brolaski's opinions altogether, noting "they are not found to be persuasive or controlling." (AR 36.) Consequently, the Court must examine whether the ALJ provided "specific and legitimate reasons" for rejecting Dr. Brolaski's opinions that are supported by substantial evidence in the record. *See Orn*, 495 F.3d at 632.

In rejecting Dr. Brolaski's opinions, the ALJ first rationalized that "Dr. Brolaski's highly restrictive assessment is inconsistent with his own mild clinical findings and those of his facility." (AR 36.) However, it is unclear which, if any, of Dr. Brolaski's clinical findings are mild. (*See* AR 376–79, 581–86, 589, 600–05.) Upon initially evaluating Plaintiff, Dr. Brolaski diagnosed Plaintiff with major depressive disorder, recurring, severe, but without psychosis. (AR 379.) In treating her, he later modified her diagnosis to major depressive disorder, recurring, severe, and with psychosis. (AR 581–85, 589.) These clinical findings are not mild; rather, they warranted Plaintiff being prescribed a total of six different antidepressants, mood stabilizers, and anti-psychotics. (*See* AR 600.) Dr. Rene, the other member of Dr. Brolaski's facility that provided mental health treatment to Plaintiff, similarly did not make mild findings. (*See* AR 374–75, 380, 382–85, 388–93, 395–99, 401–06, 455–61, 463, 465–69, 471, 474–77, 480–83, 485–89.) Accordingly, the ALJ's first

1    rationale for rejecting Dr. Brolaski's opinions is not a specific and legitimate reason

2    that is supported by substantial evidence.

3        Second, the ALJ reasoned Dr. Brolaski's assessment is "inconsistent with the

4    absence of more intensive treatment." (AR 36.) Yet, the ALJ does not explain, and it

5    is not clear to the Court, what would constitute "more intensive treatment" in these

6    circumstances other than inpatient psychiatric care. Further, as mentioned above,

7    inpatient psychiatric care is not a prerequisite to a finding of severity at step two. It

8    follows that Dr. Brolaski could form the opinion that Plaintiff's mental impairments

9    significantly impact her ability to do many work activities without her undergoing

10   inpatient psychiatric treatment. The Court also notes Plaintiff's mental health

11   treatment, which included outpatient therapy sessions and various psychotropic

12   medications, was not "conservative" or lacking in intensity. *See, e.g.*, *Mason v.*

13   *Colvin*, No. 1:12-cv-00584 GSA, 2013 WL 5278932, at *6 (E.D. Cal. Sept. 18, 2013)

14   (reasoning treatment was not "conservative" where claimant took prescription

15   antidepressants and anti-psychotic medication for almost two years to treat

16   depression, anxiety, and hallucinations, and, though not hospitalized during this time,

17   received mental health treatment by a psychiatrist and a psychiatric social worker for

18   a fourteen month period); *Matthews*, 2012 WL 1144423, at *9 (reasoning

19   psychotropic medications and outpatient therapy are not conservative treatment).

20   Therefore, the Court concludes the ALJ's second reason for rejecting Dr. Brolaski's

21   opinions is not a specific and legitimate reason that is supported by substantial

22   evidence

23        Third, the ALJ noted Dr. Brolaski's assessment is inconsistent with the

24   "findings and assessments of the consultative examiners." (AR 36.) "Even when

25   contradicted by an opinion of an examining physician that constitutes substantial

26   evidence, the treating physician's opinion is 'still entitled to deference.' " *See Orn*,

27   495 F.3d at 632–33. Thus, it is the inconsistency between (i) Dr. Brolaski's opinions

28   and (ii) Drs. Trimble's and Soliman's opinions that triggered the ALJ's obligation to

provide specific and legitimate reasons to reject Dr. Brolaski's opinions altogether. That Dr. Brolaski's opinions are inconsistent with those of the consultative examiners is insufficient alone to justify rejecting his opinions. *See, e.g.*, *Kingsley v. Berryhill*, No. 2:14-CV-1157 DB, 2017 WL 416113, at *3 (E.D. Cal. Jan. 30, 2017) (finding the ALJ did not provide specific and legitimate reasons for rejecting a treating psychologist's opinion where the ALJ merely stated the opinion was "not consistent . . . with the opinions of the examining and non-examining physicians"); *Jaquez v. Colvin*, No. CV 15-3838 AJW, 2016 WL 3031730, at *4 (C.D. Cal. May 25, 2016) (noting examining psychiatrist's "contrary opinion, standing alone," did not justify disregarding a treating source opinion, "which still must be evaluated using the factors set forth in the regulations"); *Franco v. Colvin*, No. CV-14-01670-PHX-JJT, 2016 WL 1241881, at *9 (D. Ariz. Mar. 30, 2016) (reasoning an examining physician's "contradictory medical opinion [was] not alone enough to establish a specific and legitimate reason supported by substantial evidence to reject [the claimant's treating physician]'s opinion"). Therefore, this stated reason is insufficient.[1]

Next, the ALJ reasoned: "The treating physician appears to have taken the claimant's subjective allegations at face value and merely reiterated those allegations in his report and when making his assertion regarding the claimant's ability to work." (AR 36.) The ALJ also separately concluded Plaintiff's self-reports were not credible. (AR 36–37.) "If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quoting *Tommasetti*, 533 F.3d at 1041).

---

[1] The ALJ similarly reasoned that Dr. Brolaski's opinions do "not appear to take into account the other factors, which must be considered by the undersigned, such as the other medical reports and opinions . . . ." (AR 36.) Again, however, Dr. Brolaski's opinions could not be rejected simply because there is contradictory evidence in the record. *See Orn*, 495 F.3d at 632–33. Thus, this basis is not a specific and legitimate reason for rejecting Dr. Brolaski's opinions.

1  That said, "when an opinion is not more heavily based on a patient's self-reports than

2  on clinical observations, there is no evidentiary basis for rejecting the opinion." *Id.*

3  (citing *Ryan*, 528 F.3d at 1199–00).

4  Here, although the ALJ stated Dr. Brolaski "appears to have taken" Plaintiff's

5  self-reports at face value and "merely reiterated those allegations" when making his

6  opinions, (AR 36), "the ALJ offered no basis for his conclusion that these opinions

7  were based more heavily on [Plaintiff]'s self-reports," *see Ghanim*, 763 F.3d at 1162.

8  Further, substantial evidence does not support the conclusion that Dr. Brolaski

9  formed his opinions by "merely" reiterating Plaintiff's subjective allegations. In

10  addition to providing the opinions at issue, Dr. Brolaski treated Plaintiff and recorded

11  mental status examination results, which are analogous to the results of a physical

12  examination for a physical impairment.[2] In his initial assessment, Dr. Brolaski noted

13  Plaintiff's facial expression was sad and worried, her motor activity was agitated, her

14  mood was depressed, and her thought content included suicidal ideation. (AR 378.)

15  He similarly noted in his assessment rejected by the ALJ that Plaintiff had a "blunt,

16  flat, or inappropriate affect," "psychomotor agitation," "inappropriate suspiciousness

17  or hostility," and "easy distractibility." (AR 601.) Dr. Brolaski also included his

18  diagnosis of major depressive disorder, as well as decisions regarding Plaintiff's

19  prescriptions, in his evaluations and treatment notes. (AR 377–79, 581–86, 600.)

20  Thus, although Dr. Brolaski's evaluation, treatment notes, and assessment discuss

21  Plaintiff's self-reports, they also include his "observations, diagnoses, and

22  prescriptions." *See Ghanim*, 763 F.3d at 1162. Accordingly, because (i) "the ALJ

23  offered no basis for his conclusion" that Dr. Brolaski formed his opinions by merely

24

25  _____

    [2] As one court has noted: "The results of a mental status examination provide the basis for

26  a diagnostic impression of a psychiatric disorder, just as the results of a physical examination
provide the basis for the diagnosis of a physical illness or injury." *Clester v. Apfel*, 70 F. Supp. 2d

27  985, 990 (S.D. Iowa 1999). During the examination, "the doctor records his or her observations and
impressions about the patient's mental functions by describing such things as appearance, activity,

28  mood and affect, speech and language, thought content, perceptual disturbances, insight, judgment,
and neuropsychiatric functions." *Id.*

incorporating Plaintiff's subjective allegations, and (ii) Dr. Brolaski's opinions are supported by his observations and diagnoses, the Court concludes substantial evidence does not support rejecting Dr. Brolaski's opinions on this basis. *See id.*[3]

Aside from the reasons discussed above, the ALJ does not state any other reason for rejecting Dr. Brolaski's opinions. Consequently, the Court does "not consider whether any other record evidence might provide an adequate basis for rejecting" Dr. Brolaski's opinions. *See Ghanim*, 763 F.3d at 1162 n.7.[4] In sum, because the ALJ did not provide specific and legitimate reasons for rejecting Dr. Brolaski's opinions that are supported by substantial evidence, the ALJ erred in rejecting these opinions. *See, e.g., id.* at 1162–63.

\* \* \*

In light of the foregoing, the ALJ erred in rejecting Plaintiff's mental impairment as nonsevere. The ALJ's reasons for concluding there is a lack of evidence of a severe mental impairment are unsupported by the record, and the ALJ

---

[3] Further, because the Court ultimately concludes the ALJ erred in rejecting Dr. Brolaski's opinions, the Court need not reach whether the ALJ's credibility determination withstands review. Even if Plaintiff was exaggerating her symptoms, when Dr. Brolaski's opinions are considered in addition to the other treatment evidence in the record, the medical evidence does not "clearly establish[]" that Plaintiff lacks "a severe mental impairment." *See Davenport*, 608 F. App'x at 481 (quoting *Webb*, 433 F.3d at 687). In other words, when Dr. Brolaski's opinions are afforded the appropriate weight, there is not substantial evidence to conclude the medical evidence clearly shows Plaintiff's mental impairments are "slight abnormalit[ies]" that only have a "minimal effect" on her ability to work. *See Webb*, 433 F.3d at 686.

[4] The Court acknowledges Dr. Brolaski did not provide narrative language to support his opinions in his mental impairment assessment. (*See* AR 602–03.) However, even where a treating physician's opinions are "in the form of check-box questionnaires, that is not a proper basis for rejecting an opinion supported by treatment notes." *Esparza v. Colvin*, 631 F. App'x 460, 462 (9th Cir. 2015) (citing *Garrison*, 759 F.3d at 1014). Although Dr. Brolaski's assessment lacks narrative language, his opinions, as discussed above, are supported by his initial evaluation, his treatment notes containing his diagnosis, and his recorded observations. In addition, the ALJ did not state he was invoking his ability to reject an opinion that is "brief, conclusory, and inadequately supported by clinical findings." *See Thomas*, 278 F.3d at 957. Accordingly, concluding the ALJ did not err on this basis is not appropriate. *See Ghanim*, 763 F.3d at 1162 n.7; *accord Orn*, 495 F.3d at 630 (providing the Court "review[s] only the reasons provided by the ALJ in the disability determination").

1    erred in rejecting Dr. Brolaski's opinions. This case is not one where "none of the

2    medical records contain[] evidence of a mental limitation," *see Spence*, 617 F. App'x

3    at 754, or where the claimant's physician has indicated the claimant's depression was

4    "either mild or improved with treatment," *see Davenport*, 608 F. App'x at 482.

5    Rather, in light of Dr. Brolaski's opinions and the other treatment evidence before

6    the ALJ, the ALJ did not have " 'substantial evidence to find that the medical

7    evidence clearly established that' [Plaintiff] did not have a severe mental

8    impairment." *See Davenport*, 608 F. App'x at 481 (quoting *Webb*, 433 F.3d at 687).

9    Thus, the ALJ should have proceeded past step two of the five-step analysis. *See*

10   *Webb*, 433 F.3d at 688.

12   **B.    Severity of Plaintiff's Carpal Tunnel Syndrome**

13   Plaintiff's second objection argues the ALJ erred in finding her carpal tunnel

14   syndrome is not severe because the ALJ's finding "improperly discredits clinical and

15   diagnostic evidence to the contrary." (Objs. 8:17–19.) The Court therefore analyzes

16   "whether the ALJ had substantial evidence to find that the medical evidence clearly

17   established that" Plaintiff's carpal tunnel syndrome was not severe. *See Webb*, 433

18   F.3d at 687.

19   To illustrate this inquiry, in *Webb*, the claimant sought disability benefits based

20   on back pain, hypertension, knee pain, and other physical ailments. 433 F.3d at 687.

21   The ALJ found the claimant lacked a severe impairment or combination of

22   impairments, ending the analysis at step two. *Id.* The Ninth Circuit reversed. *Id.* at

23   688. It recognized the medical record depicted "an incomplete picture of [the

24   claimant]'s overall health during the relevant period," but the court reasoned the

25   record contained "evidence of problems sufficient to pass the de minimis threshold

26   of step two." *Id.* at 687. Moreover, the court reasoned that, unlike a prior decision

27   where it affirmed a finding of no disability at step two, there was not a "total absence

28   of objective evidence" of a severe medical impairment or combination of

impairments. *Id.* at 688. The Ninth Circuit therefore remanded the case for the ALJ to proceed past step two. *Id.*; *see also Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (concluding the ALJ did not err in rejecting claim at step two where even the claimant's doctor was hesitant to conclude that any of the claimant's symptoms and complaints were medically legitimate).

In this case, the Court agrees that the ALJ erred in terminating Plaintiff's claim at step two in light of Plaintiff's carpal tunnel syndrome. The ALJ provided two reasons for concluding Plaintiff's carpal tunnel syndrome is not severe, but these reasons are not substantiated by the record. First, the ALJ reasoned there "is no evidence the claimant has received any treatment for her reported carpal tunnel syndrome or that she requires surgery or even the use of conservative modalities such as wrist splints." (AR 36.) There is indeed evidence, however, that Plaintiff received treatment for her carpal tunnel syndrome. After diagnosing Plaintiff with severe carpal tunnel syndrome on the right side and mild carpal tunnel syndrome on the left side, Dr. Ghausi recommended wrist splints, possible steroid injections, and an EMG to evaluate the severity of Plaintiff's condition. (AR 440.) The EMG revealed median nerve lesions at both of Plaintiff's wrists consistent with carpal tunnel syndrome, "extremely severe on the right and mild to moderate on the left." (AR 447.) Further, after Dr. Ghausi prescribed wrist splints, Plaintiff's treating physician noted her right hand pain and wrist splint and recommended a treatment plan involving Lyrica, a pain medication. (*See* AR 464.) Last, when Plaintiff returned to Dr. Ghausi because her symptoms had not improved, he referred her to see an orthopedist for consideration of surgical intervention and stated she would continue with conservative treatments in the meantime. (AR 558.) Hence, the record does not substantiate the ALJ's first rationale for rejecting Plaintiff's carpal tunnel syndrome as nonsevere.

Second, the ALJ reasoned Plaintiff's carpal tunnel syndrome is not severe because "apart from that single mention of carpal tunnel in the evidence, no further

1   complaints regarding wrist pain are cited in the evidence." (AR 36.) The record does

2   not support this rationale either. As noted above, Plaintiff initially sought treatment

3   from her primary care physician for weakness in her hands, and she later reported

4   wrist pain as well as numbing in both of her hands. (AR 387, 394, 415.) Plaintiff also

5   reported to Dr. Rene that she was feeling depressed due to recent numbness and

6   tingling in her hands and fingers. (AR 388.) Finally, after Dr. Ghausi diagnosed

7   Plaintiff with carpal tunnel syndrome in his initial evaluation, Plaintiff returned to

8   Dr. Ghausi to seek treatment for "no change in symptoms of hand pain and

9   numbness." (AR 558.) Thus, the record does not corroborate the ALJ's second reason

10  for finding Plaintiff's carpal tunnel syndrome is nonsevere.

11       In addition, immediately after discussing Plaintiff's carpal tunnel syndrome,

12  the ALJ reasoned that "no treating or examining medical source has assessed the

13  claimant as wholly incapable of sustaining work activity due to any medical

14  condition." (AR 36.) But that statement does not adhere to the standard for step two

15  of the disability analysis. Plaintiff did not have to demonstrate her condition rendered

16  her "wholly incapable of sustaining work activity" to survive step two—the minimal

17  screening device used to dispose of groundless claims. *See Smolen*, 80 F.3d at 1290.

18  Rather, the ALJ could find her impairment was "not severe *only if* the evidence

19  establishe[d] a slight abnormality that has no more than a minimal effect on

20  [Plaintiff]'s ability to work." *See Webb*, 433 F.3d at 686. If the ALJ was "unable to

21  determine clearly the effect of" Plaintiff's carpal tunnel syndrome on her "ability to

22  do basic work activities, the sequential evaluation should not [have] end[ed] with the

23  not severe evaluation step." *See Webb*, 433 F.3d at 687.

24       In sum, the only reasons provided by the ALJ for rejecting Plaintiff's carpal

25  tunnel syndrome as nonsevere are not substantiated by the record. There is not

26  substantial evidence for the ALJ to have found "that the medical evidence clearly

27  established that" Plaintiff's impairment was "a slight abnormality that has no more

28

than a minimal effect on [her] ability to do work." *See Webb*, 433 F.3d at 686–87. Therefore, the ALJ should have proceeded past step two. *See id.* at 688.

## V.   **CONCLUSION**

In light of the foregoing, the ALJ erred in rejecting Plaintiff's application for disability benefits at step two of the five-step sequential analysis. There is not a "total absence of objective evidence" of a severe medical impairment in this case that would permit the Court to affirm the ALJ's finding of no disability at step two. *See Webb*, 433 F.3d at 688; *see also Ortiz, e.g.*, 425 F. App'x at 655. The Court does not suggest that Plaintiff will prevail in proving that she is disabled and entitled to SSI benefits. Yet, the "ALJ should have continued the sequential analysis beyond step two because there was not substantial evidence to show that [Plaintiff]'s claim was 'groundless.' " *See Webb*, 433 F.3d at 688 (quoting *Smolen*, 80 F.3d at 1290).

Accordingly, the Court **SUSTAINS** Plaintiff's objections to the R&R (ECF No. 20) and **DECLINES** to adopt the R&R (ECF No. 19). Further, the Court **GRANTS** Plaintiff's motion for summary judgment (ECF No. 11) and **DENIES** Defendant's cross-motion for summary judgment (ECF No. 14). Finally, the Court **REMANDS** this action for further proceedings consistent with this order. *See* 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

**DATED:  March 7, 2017**

Hon. Cynthia Bashant
United States District Judge